UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| CHRISTOPHER PROSSER, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-85-RLW |
| | ) |
| RONALD PROCTOR, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon review of plaintiff Christopher Prosser's Second Amended Complaint, filed on his behalf by appointed counsel. (ECF No. 19). For the reasons explained below, the Missouri Department of Corrections, Nina Zumwalt, Anne Precythe, and Latoya Duckworth will be dismissed from this action, and the Clerk will be directed to serve process upon the remainder of the Second Amended Complaint.

### Background

Plaintiff is an inmate in the custody of the Missouri Department of Corrections (also MDOC). In 2009, he filed a 42 U.S.C. § 1983 lawsuit against Corizon, Corizon personnel, and MDOC officials. *See Prosser v. Nagaldinne, et al.*, No. 4:09-cv-2117-JAR (E.D. Mo. 2009). He alleged the defendants denied necessary medical care following a spine injury, causing him to suffer lifelong pain and permanent paralysis. On May 20, 2013, the case was dismissed upon plaintiff's notice of dismissal, in which he advised he and the defendants had reached a settlement. Neither the settlement agreement nor the terms thereof were provided to the Court or referenced in the Court's order dismissing the action, nor did the Court retain jurisdiction over the settlement

1

agreement. At present, plaintiff is confined to a wheelchair and suffers from chronic severe pain and other ailments.

## The Second Amended Complaint

Plaintiff brings the instant action against a total of 19 defendants: Dr. Ronald Proctor, the MDOC, Corizon Health, Inc. (Corizon), Corizon Pharmacorr, Inc. (Pharmacorr), Dr. Mina Massey, Dr. Thomas Bredeman, Dr. Gary Babich, Corizon's Director of Operations Debra Steinman, Dr. Abby Rardin, Dr. Thomas Cabrera, Nurses Tamara Anderson, Nina Zumwalt, and Melanie Powell, Wardens James Hurley and Chantay Godert, Assistant Warden Richard Griggs, Anne Precythe and George Lombardi (the current and former Directors of the MDOC, respectively), and Medical Contract Monitor Latoya Duckworth. He sues the individual defendants in their individual capacities. Condensed and summarized, he alleges as follows.

The events giving rise to plaintiff's claims occurred in 2014, following Corizon's implementation of a new policy by which it would no longer administer Tramadol and Neurontin, among other drugs. Plaintiff had been taking Tramadol and Neurontin, as prescribed by his rheumatologist, with good results. In September of 2014, plaintiff was told he would not be given Tramadol and Neurontin, and would instead be given Tegretol. He filed an Informal Resolution Request (IRR) about the change, but Steinman responded by stating the drugs were being withheld because they were no longer appropriate for him.

Plaintiff took the first dose of Tegretol in September of 2014. Immediately thereafter, he encountered Dr. Proctor and asked him about the drug. Dr. Proctor assured him the drug had been around a long time and was safe. On or about September 29, 2014, plaintiff began experiencing a fever and flu-like symptoms, severe painful lesions on his hands, arms, face, and the insides of his

2

nostrils, and other symptoms. He then developed bleeding, oozing lesions on his fingers and stabbing pains in his hands, along with vomiting and diarrhea. His skin began to slough off, exposing areas that resembled severe burns. He sought treatment from Powell, but she refused to treat him or let him see a doctor. Plaintiff's symptoms worsened and he sought treatment from Powell on two more occasions, but she refused to provide treatment and told him to return to his housing unit.

On October 3, plaintiff met with the prison's Director of Mental Health and described his symptoms and history of having taken Tegretol. The Director's nurse diagnosed plaintiff with Stevens Johnson Syndrome (SJS), a painful and potentially life-threatening condition often triggered by medications.[1] The nurse summoned Dr. Rardin, who also diagnosed SJS and told plaintiff that, if his condition worsened over the weekend, he would need to be transported to a hospital equipped with a burn unit. She did nothing to facilitate transferring plaintiff, nor did she provide him with medical treatment for his symptoms.

Plaintiff's SJS symptoms progressed. On October 5 he was seen by a nurse who opined that plaintiff should be treated at a hospital with a burn unit. The nurse contacted Dr. Massey for authorization to do so, and Dr. Massey told her to call Dr. Bredeman. When the nurse called Dr. Bredeman, he told her to put plaintiff in an administrative segregation cell inside the infirmary, and ordered that no medical treatment be provided to him. Plaintiff's condition worsened. On

---

[1] SJS often begins with a fever and flu-like symptoms, followed by blistering and peeling of the skin that causes very painful raw areas called erosions that resemble a severe hot-water burn. Severe damage to the skin and mucous membranes makes SJS a life-threatening disease. Because the skin acts as a protective barrier, extensive skin damage can cause a dangerous loss of fluids and allow infection to develop. Serious complications can include pneumonia, sepsis, shock, multiple organ failure, and death. https://ghr.nlm.nih.gov/condition/stevens-johnson-syndrome-toxic-epidermal-necrolysis (last visited August 6, 2019).

3

October 6 in the infirmary, plaintiff encountered Dr. Cabrera. He described his condition and asked Dr. Cabrera to send him to the hospital, but Dr. Cabrera refused. Plaintiff insisted that he needed emergency care, but Dr. Cabrera told him to sue them again or maybe learn to not bite the hand that feeds him, and discharged him from the infirmary.

Shortly thereafter, plaintiff had a regularly-scheduled telemed conference with one Dr. Pryor, who examined him using high-resolution camera. Dr. Pryor diagnosed SJS secondary to Tegretol, and prescribed eight Dexamethasone pills to halt the disease's progression. He instructed that plaintiff take four pills immediately and four the following day, and instructed that plaintiff would require further follow up if his condition did not enter remission. On October 6, plaintiff took the first four pills, but was told the remaining four pills were lost and he would be called when they were found. In the pharmacy, plaintiff encountered Anderson and explained the situation. Anderson refused to authorize purchase or delivery of the remaining Dexamethasone, and told plaintiff to leave the pharmacy. The SJS progressed, causing plaintiff to suffer pain and other serious symptoms.

On October 9, plaintiff met with Steinman, Corizon's Director of Operations. Steinman agreed that plaintiff's medication should not have been changed by anyone other than Dr. Seva or Dr. Pryor, but took no action.

Plaintiff's symptoms eventually subsided, and he began writing letters to "appropriate authority figures in the Missouri Department of Corrections and [Corizon]." He told Anderson, Lombardi, Griggs, Godert, and Hurley about the interference with his prescribed medications, but they failed to take action. Plaintiff alleges that Duckworth "further allowed for the unconstitutional and harmful acts "by Corizon by letting them occur without intervention. He alleges that Precythe

4

turned and continues to turn a blind eye to Corizon's unconstitutional behavior and has "refused to intervene and ensure that inmates like plaintiff have been and are provided with adequate medical care," and was deliberately indifferent to the health, welfare and constitutional rights of incarcerated patients. Plaintiff concludes that Precythe therefore tacitly approved Corizon's unconstitutional behavior.

In 2018, Corizon again retaliated against plaintiff by withholding administration of another of his medications, Humira, which had been prescribed to treat arthritis. Also, as of the date of the second amended complaint, Corizon and Pharmacorr have refused to fill his prescriptions for Tramadol and Neurontin. Plaintiff claims the defendants violated his constitutional rights by failing to provide medical treatment.

## Discussion

The Missouri Department of Corrections will be dismissed from this action. As an entity of the State of Missouri, the Missouri Department of Corrections is not a person within the meaning of the Civil Rights Act, 42 U.S.C. § 1983. *See Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir. 1999) (en banc). The Missouri Department of Corrections also has Eleventh Amendment immunity, and is not subject to an action for damages or equitable relief. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1984).

Zumwalt will also be dismissed from this action. Plaintiff claims that Zumwalt's acts and omissions in failing to provide and delaying medical care constituted deliberate indifference to his serious medical needs, in violation of his constitutional rights. However, plaintiff alleges no facts showing what Zumwalt did or failed to do to cause harm. Absent a factual underpinning, plaintiff's statements amount to legal conclusions that are not entitled to the presumption of truth. *See Wiles*

*v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (stating that while "court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Precythe and Duckworth will also be dismissed from this action. To state a claim under § 1983, plaintiff must plead that a government official has personally violated his constitutional rights. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676); *see also Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (claims sounding in respondeat superior are not cognizable under § 1983). In requiring a plaintiff to allege facts showing each defendant's personal involvement in the deprivation of his constitutional rights, the Court assesses each defendant relative to his or her authority over the claimed constitutional violation. *Jackson*, 747 F.3d at 543. A person with a supervisory or administrative position may be liable if her direct action or failure to supervise and train the offending employee caused the constitutional violation. *Id.* (citations omitted). Such person's personal involvement can also be established by allegations that she was directly involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions. *Id.* (citations omitted).

Here, regarding Precythe, plaintiff alleges she "was, and all times relevant to this action was, employed by the State of Missouri and responsible for administering and overseeing the prison facilities. . .". However, most of the events forming the basis of plaintiff's claims occurred in 2014, before Precythe was employed by the MDOC. Plaintiff also states that Precythe turned a blind eye to Corizon's unconstitutional behavior, refused to intervene and ensure that "inmates like plaintiff" receive proper medical care, was deliberately indifferent to the health, welfare and constitutional rights of incarcerated patients, tacitly approved Corizon's unconstitutional behavior,

6

and (along with other defendants) had "policies practices or customs that caused the individual defendants to demonstrate deliberate indifference to plaintiff's serious medical needs" and "failed to adequately train or supervise the individual defendants." Regarding Duckworth, plaintiff alleges she was the medical contract monitor for MDOC, and "allowed for the unconstitutional and harmful acts" by permitting them to occur without intervention. However, plaintiff sets forth no non-conclusory allegations that Precythe or Duckworth were aware that he had a serious medical need or were even aware of his situation at all, or that they were directly involved in creating, implementing, or enforcing an unconstitutional policy and he was harmed as a result. Additionally, plaintiff alleges no facts that would state a plausible claim for failure to train or supervise. Instead, plaintiff's claims against Precythe and Duckworth sound in respondeat superior. However, such claims are not cognizable under § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). Precythe and Duckworth will therefore be dismissed from this action, without prejudice.

Having liberally construed the second amended complaint and taken plaintiff's factual allegations as true, the Court concludes that plaintiff has adequately stated plausible claims against the remaining defendants. The Court will therefore require them to respond to the second amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that the Missouri Department of Corrections, Nina Zumwalt, Anne Precythe, and Latoya Duckworth are **DISMISSED** from this action. A separate order of partial dismissal will be entered herewith.

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the second amended complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to defendants James Hurley, Chantay Godert, Richard Griggs, and George Lombardi in their individual capacities.

**IT IS HEREBY ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the second amended complaint, pursuant to the service agreement the Court maintains with Corizon, as to defendants Corizon Health, Inc. and Corizon Pharmacorr, and as to Dr. Ronald Proctor, Dr. Mina Massey, Dr. Thomas Bredeman, Dr. Gary Babich, Debra Steinman, Dr. Abby Rardin, Dr. Thomas Cabrera, Tamara Anderson, and Melanie Powell in their individual capacities.

Dated this 6th day of August, 2019.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE